[No. 8200. Department One. January 8, 1910.]

H. DAHLSTROM *et al.*, *Appellants*, v. JOHN S. ANDERSON, *Respondent.*[1]

HIGHWAYS—COUNTY ROADS — ESTABLISHMENT — EVIDENCE—SUFFI-CIENCY. The evidence is insufficient to show the establishment of a county road over certain lands, where the county commissioners' record of an order establishing the road was so indefinite that it could not be located with reference to the government subdivisions, and an engineer's projection of the field notes of the survey did not bring the road within 100 feet of the land in question, and there was no proof that the road as opened by the supervisors passed over the land.

SAME. Proof of user, in early times, of a road as a public high-way, is not proof of establishment of a county road over the tract by county officers.

HIGHWAYS—ESTABLISHMENT—PRESCRIPTION. A public highway by prescription over certain lands is not established by proof that, in an open country, a road had been used in the general direction claimed, changes having been made in the travel as the country settled up until the whole section was platted, with streets and cross streets, and at the time of the trial the change in travel was so com-plete that no part of the original way remained in existence unless over the particular strip, public buildings and dwellings having been built in the road as shown by the earlier maps, portions of it having been fenced, and no part of it having been used as a road for many years.

Appeal from a judgment of the superior court for King county, Morris, J., entered February 20, 1909, upon findings in favor of the defendant, dismissing an action for an in-junction. Affirmed.

*Reynolds, Ballinger & Hutson,* for appellants.
*Bo Sweeney,* for respondent.

FULLERTON, J.—In this action the appellants sought to enjoin the respondent from enclosing a tract of ground claimed to be a public highway. Without the use of maps, which cannot well be reproduced here, it is somewhat difficult

[1]Reported in 106 Pac. 127.

to make clear the situation; but it appears that in 1880 a
petition was presented to the board of county commissioners
of King county praying for the establishment of a county
road, "commencing in the center of the road near the outlet
of Lake Union, and running thence in a northwesterly direc-
tion on the most practical route" over a generally described
course terminating at "salt water near the mouth of Salmon
Bay." The board of county commissioners entertained the
petition, and appointed viewers and a surveyor to lay out
and survey the road. The persons so appointed acted in
their several capacities, and proceeded to, and did, lay out
and survey a road along a route following the general di-
rection of the route described in the petition, subsequently
making a report of their doings to the commissioners, who
ordered the road established and directed the supervisor of
the road district in which the proposed road lay to open the
same.

The report of the viewers and surveyor is quite as in-
definite as the petition for the road, and it is impossible to
tell from the report, or the field notes of the surveyor ac-
companying the report, the location of the road with ref-
erence to the government surveys, or with reference to any
natural or artificial monument with which the government
surveys are connected. What was done by the supervisor
towards opening the road does not appear, but the people
for a number of years used a way as a wagon road and for
horseback and foot travel running in the general direction of
the surveyed road.

Some years after the survey the owner of a part of the
land over which the road passed platted the same into
blocks, seemingly without regard to the road thought to
have been established by the proceedings above mentioned.
This plat was called "Farmdale Homestead," and while it
showed a county road extending across it, the road shown
does not correspond in its courses or distances with the field
notes of the surveyed road. In 1889, the owners of the Farm-

dale tract conveyed the greater part thereof to other persons, who procured a vacation of the part of the Farmdale plat purchased by them, and replatted it into streets, lots, and blocks under the name of "Gilman Park." In replatting the tract, the dedicators seem to have trenched upon a part of the Farmdale Homestead tract not conveyed to them, for in the final adjustment it was found that block 59 of the Gilman Park plat included land properly a part of block 49 of the Farmdale Homestead plat, which was among the reserved blocks.

The block in Gilman Park was 550 feet in length, east and west, by 200 feet in width, north and south, and was divided into 22 lots, numbered from 1 to 11 from west to east on the northern tier, and 12 to 22 from east to west on the southern tier. The north line of block 49 of the Farmdale Homestead tract was found to cross the south line of block 59 of the Gilman Park tract near the southeast corner of lot 17 therein, and extend in a northwesterly direction, crossing the west line of the block near the southwest corner of lot 1, thus making fractional lots 17, 18, 19, 20, and 21, and obliterating 22 almost entirely.

Some time prior to the commencement of this action, the appellants became the owners by purchase of fractional lots 19, 20, and 21, and the west half of lot 18, in block 59, Gilman Park, and erected dwellings thereon. At the time of the purchase, that part of block 49 of the Farmdale Homestead tract lying in block 59 of the Gilman Park plat was open, and the appellants and their tenants had access to the street on the south of the block by passing over the unenclosed land. Later on, however, the respondent purchased fractional lot 17, and the east half of lot 18 together with that part of block 49, which lay immediately south of these lots and enclosed the tract purchased with a fence. The effect of this was to cut off the appellants and their tenants from the acknowledged public highways, and they thereupon instituted this action.

The appellants contend that the county road attempted to be established by the county commissioners of King county in 1880, as originally marked on the ground, followed the north line of block 49 of the Farmdale Homestead tract, lying wholly upon that block, and that it was kept open and used by the public as a highway from the time of its original location until it was closed by the respondent; and is, consequently, a public highway both in virtue of the fact that it was laid out and established as such by the county commissioners of King county, and by prescription, it having been used by the public as such for a period of time much longer than the period of the statute of limitations.

As to the first contention, if it could be said that the proceedings had before the King county commissioners established a road at all, the proof does not show that the tract fenced by the respondent formed a part of it. The only evidence on the question is the testimony of an engineer called by the appellants themselves. He stated that the road, as he projected it from the field notes returned by the surveyor, did not come closer than 105 feet of this particular tract. Nor is there any evidence that the road as opened by the supervisor under the order of the county commissioners passed over this particular tract. There was some evidence, it is true, that in the earlier times this particular tract had been used as a public way both for wagons and pedestrians, but this is not proof of the establishment of a county road over the tract by the duly constituted county officers. If it were conceded, therefore, that the very indefinite record made by the county commissioners was sufficient to establish a lawful county road, we could not find that the road so established passed over the particular tract in question here.

The evidence to the effect that a public way over the tract had been established by use is much stronger, but we do not think it possesses that certainty required in such cases. When travel first began along the route over which the road was attempted to be established, the country was open and re-

mained so in its greater part for a considerable period of time. During this period the travel seems to have followed substantially one general way; but as the country gradually settled up, changes were made in it to suit the convenience of the settlers, seemingly without regard to the claim that the public had a right to a particular way. This change was so complete that at the time of the trial no part of the original way, unless the particular strip in question here be an exception, remained in existence as a way. Indeed, it was shown that many of the buildings, and among them the city hall of the city of Ballard, were erected on the line of the road as it was shown on some of the earlier maps, and that a public school building of the same city was erected in what was once the traveled way. Then again, the entire way through this particular block had not been opened for a number of years. It was shown that former owners of that part of block 49 lying immediately west of the tract here in question closed it for travel to the public at its western extremity several years prior to the trial, without protest from any of the public authorities, and that they left that part of it open which is now the property of the respondent for their own convenience, permitting such use of it as was made by the public through sufferance rather than as a matter of right. Moreover, there has been no demand for this particular tract as a public way for many years. The surrounding country has long been platted into lots and blocks, with streets and cross-streets open to public use, and these streets now furnish, and have long furnished, all necessary ways for the public at large. The foregoing facts seem to us to argue conclusively against the claim of a public way, and as the appellants do not contend that they have individually a right of way over it, we think the judgment should stand affirmed, and it will be so ordered.

RUDKIN, C. J., CHADWICK, and GOSE, JJ., concur.

MORRIS, J., took no part.